THOMAS P. McKENNA

*v.*

RICHARD F. CORCORAN and JOSEPH A. DUFFY.

[Decided June 26th, 1905.  Filed October 20th, 1905.]

Where separate judgments are recovered against the maker and endorser of a promissory note and the latter, who is surety, pays the judgment against himself, the payment does not operate as a satisfaction of the judgment against the principal, but the surety is entitled to have the creditor assign the other judgment to him, on paying the costs incurred in its recovery.

Heard on bill, answers and proofs in open court.

This is a bill filed by Thomas P. McKenna against Richard F. Corcoran and Joseph A. Duffy.

The purpose of the bill is to obtain, on behalf of the complainant, subrogation as against Duffy of the rights of Corcoran, who is the owner of a judgment against Duffy.  There is also a prayer in the bill that Duffy be decreed to pay to the complainant the amount of the judgment now owned by Corcoran, which the complainant claims he is entitled to by right of subrogation.

*Messrs. Collins & Corbin,* for the complainant.

*Mr. Charles J. Roe,* for the defendants.

GARRISON, V. C.

The facts are that in January of 1902 Duffy and McKenna, who were each lawyers, and each residents of Long Branch, New Jersey, entered into an agreement by which McKenna leased a dwelling-house at Long Branch to Duffy for $600 a year, Duffy to install in the house a steam-heating apparatus.

The terms of letting are expressed in a letter dated January

3d, 1902, from Duffy to McKenna, and there is no other evidence respecting the contract excepting the oral evidence, and in this McKenna's testimony is in accord with the statements contained in Duffy's letter, and Duffy's oral testimony conflicts with what he wrote in the letter.

I find the fact to be as above stated.

Duffy entered into possession of the property about February 2d, 1902, and the steam heat was installed, and about the 17th of February, 1902, McKenna requested Duffy to pay some part of the rent. Duffy stated his inability to do this, and as a result of this interview Duffy gave a note for $600 to McKenna, at three months, dated the 17th of February, 1902.

The undoubted purpose of this transaction was to enable McKenna to realize $600 by getting the note discounted, and to enable Duffy to pay off the rent in small installments by paying on account of the note as it fell due on its first due-day and at the subsequent renewals thereof which they intended to make.

When the note fell due on the 18th of May, 1902, it was renewed, and it was again renewed when it fell due on the 18th of August, 1902. When it fell due on the 18th of October, 1902, it was not renewed, but was protested, and on the 16th of June, 1903, the Citizens National Bank of Long Branch, at which institution the note had been discounted, obtained a judgment against Duffy for the amount of the note, with interest and costs.

Subsequently this judgment was purchased by and an assignment was made to Richard F. Corcoran.

On the 7th of June, 1904, judgment was entered by Corcoran against McKenna on the same note.

On the 3d of September, 1904, McKenna paid this last-named judgment to the sheriff and demanded of Corcoran, through Corcoran's attorney, Mr. Roe, an assignment of the judgment of June 16th, 1903, of the bank against Joseph A. Duffy, claiming that since he had paid the judgment against himself, founded upon a note of which Duffy was the maker, it was a security to which he was entitled to subrogation upon payment of the debt to Corcoran.

Corcoran consented to deliver the note, but refused to assign

the judgment, his reason for the refusal to assign being that Mr. Duffy claimed that he was not primarily responsible on the note, and that therefore Corcoran should not assign the judgment to McKenna.

In my opinion, where one who is a surety pays the debt, he is entitled to all of the securities that the creditor has, and that it is not proper for the creditor to withhold any such securities upon any pretext as to the responsibility or liability of those under obligation to pay such securities, but he must, upon receiving payment, transfer them.

The defendants, however, insist that since the judgment in each of the cases was for the same cause of action (namely, a promissory note signed by Duffy and endorsed by McKenna) that the payment by McKenna of the judgment against himself satisfied the judgment that had been recovered against Duffy.

This was the early English rule (*Sheld. Subr.* (*2d ed.*) *203 § 135*), but it has been changed in England by statute, and in most of the states of the United States. *Sheld. Subr. 205 § 186 et seq.*

In New Jersey the statute regulates the proceedings on execution upon a joint judgment against principal and surety in such a way as to protect the surety, and gives to a surety who pays the judgment the benefit thereof against the principal. *2 Gen. Stat. p. 2538 § 36; P. L. 1903 p. 543 § 35; Brown* v. *White, 29 N. J. Law (5 Dutch.) 514 (Court of Errors and Appeals, 1861,* reversing Supreme Court, *29 N. J. Law (5 Dutch.) 307; Durand* v. *Trusdell, 44 N. J. Law (15 Vr.) 597 (Supreme Court, 1882)* ; *Delaware, Lackawanna and Western Railroad Co.* v. *Oxford Iron Co., 38 N. J. Eq. (11 Stew.) 151 (Vice-Chancellor Van Fleet, 1884).*

In the case of *Brown* v. *White, supra,* the court of errors and appeals held that where one of several defendants pays to the plaintiff a sum of money in satisfaction of a judgment, and procures an assignment of the judgment to himself, this payment does not operate as a satisfaction of the judgment, as to any of the defendants, except the one paying the money, unless it appears that the payment was intended as a satisfaction of the judgment as to all of them.

Applying this principle to the case in hand, I am clear that the payment by McKenna of the judgment against himself was not intended as, and must not be held to be, a satisfaction of the judgment against Duffy; that the judgment against Duffy was a security in the hands of the creditor for a debt originally due by Duffy as principal and McKenna as surety, and that upon payment to the creditor by the surety, the latter is entitled to the assignment of the collateral, namely, the judgment against Duffy.

There is a small balance of costs incurred by Corcoran in obtaining the judgment against Duffy, and this balance, of course, must be paid to him by the complainant before he is called upon to assign to the complainant.

I will advise a decree in accordance with the views herein expressed, the terms of the decree to be settled upon notice.